UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ANTHONY ANDREW MATERA, SR. | ) | Case No. 09-20616-SSM |
| SHARON ELAINE MATERA | ) | Chapter 7 |
| | ) | |
| Debtors | ) | |
| | ) | |
| SWIFT FINANCIAL CORP., *et al.* | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 10-1081 |
| | ) | |
| ANTHONY ANDREW MATERA, SR. | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

When M & I Bank, FSB ("M & I"), acting through Swift Financial Corporation ("Swift

Financial"), extended a $50,000 line of credit to Rivercraft Corporation ("Rivercraft") in April

2008, it required the personal guaranty of Rivercraft's owner and general manager, Anthony

Andrew Matera, Sr.  The loan application was taken over the telephone, with an employee of

Swift Financial entering the debtor's oral responses into a computer database.  Among the

information solicited was Mr. Matera's household income, which the database entry reports as

being $250,000.  Although payments were made on the line of credit for approximately a year,

the loan eventually went into default.  After Mr. Matera subsequently filed for bankruptcy

protection, M & I and Swift Financial brought the present action to determine that his liability on

the guarantee was excepted from discharge because the loan application fraudulently overstated

his household income.[1]  At the conclusion of the plaintiff's evidence, Mr. Matera moved for

judgment as a matter of law[2] on the ground that an application taken over the telephone did not

satisfy the requirement of a "statement in writing" for the purpose of the exception to discharge

in § 523(a)(2)(B), Bankruptcy Code, for extensions of credit obtained by false statements

respecting a debtor's or insider's financial condition.  The court deferred ruling on the motion

until the close of the evidence and then took the motion, as well as the issues of reliance and

intent to deceive, under advisement.  For the reasons stated, the court concludes that the debtor's

liability to Swift Financial is dischargeable.  This opinion constitutes the court's findings of fact

and conclusions of law under Rule 7052, Federal Rules of Bankruptcy Procedure, and Rule

52(a), Federal Rules of Civil Procedure.

Background

Anthony Andrew Matera, Sr., and his wife, Sharon Elaine Matera, filed a joint voluntary

petition in this court on December 31, 2009, for relief under chapter 7 of the Bankruptcy Code,

and he and his wife received discharges on April 5, 2010.

Mr. Matera testified that he purchased the assets of Rivercraft, a retail boat dealership in

Gloucester, Virginia, after he retired in 2005 from a large oil company.  He was seeking business

---

[1]  Mr. Matera's wife was also named as a defendant but was subsequently dismissed as a
party to the action.

[2]  Rule 52(c), Federal Rules of Civil Procedure, as incorporated by Rule 7052, Federal
Rules of Bankruptcy Procedure, provides in pertinent part as follows:

> (c) JUDGMENT ON PARTIAL FINDINGS. If a party has been fully heard on an issue
> during a nonjury trial and the court finds against the party on that issue, the court may
> enter judgment against the party on a claim or defense that, under the controlling law, can
> be maintained or defeated only with a favorable finding on that issue. The court may,
> however, decline to render any judgment until the close of the evidence.

loans in 2007 and 2008 and qualified for loans of $100,000 to $120,000 from various financial

institutions.  He testified that those institutions requested written financial data about his

household's finances, including tax returns, financial statements, personal and business profit

and loss statements, and bank statements from personal and business accounts.  He testified that

he did not take those loans out, however, because he had been receiving promotional mailers

from Swift Financial stating that he was pre-approved for a business loan up to $100,000, and he

hoped to find a better interest rate or lack of prepayment penalty there.  He further testified that

at the time he applied for the loan from Swift Financial, he was fully solvent, that his house was

worth $1.3 million dollars and had approximately $500,000 in equity, and that he had $62,000 to

$63,000 in retirement savings.

The evidence shows that Swift Financial gathered information from Mr. Matera over the

telephone on April 15, 2008, including financial information for his household and Rivercraft.

The information was transcribed into a database by the Swift Financial employee who spoke to

Mr. Matera.[3]  Although Mr. Matera testified that he did not remember giving a specific income

figure, the data entry "screen shot" reflects that he reported having an annual gross household

income of $250,000.  He also testified that, based on his experience with approving boat loans

for customers of his dealership, he assumed that the loan was of the "stated income" type, in

which the credit-granting decision would be based primarily, if not exclusively, on his credit

score and credit report and not on his actual income.  Swift Financial's witness stated that, in

addition to the information obtained directly from Mr. Matera, Swift Financial obtained a Dunn

---

[3]  Although the call was recorded, neither a recording nor a transcript was offered into
evidence at the trial, and the court ruled that the witness (who had not participated in the
telephone interview) could not testify as to what was said during the call.

and Bradstreet report on the business and reviewed information from the North America

Business Classification System.  Swift Financial also obtained a personal credit report on Mr.

Matera looking for a minimum credit score and compared the income he had reported to the

debts shown on the credit report.  The witness testified that Swift Financial's policies with

respect to verification were consistent with those of other lenders it competed with, and that,

based on the information it obtained from other sources, nothing indicated that Mr. Matera was

lying.  Under Swift Financial's underwriting standard, Mr. Matera's reported annual income of

$250,000 was sufficient to support a $50,000 line of credit, although not the $100,000 he had

applied for.

Rivercraft drew down $45,000 on the line of credit in 2008 and had paid it down to

$40,345 by May of 2009.[4]  By the time Mr. Matera and his wife filed for bankruptcy on

December 31, 2009, however, the amount owed had increased to $48,968.22 because of interest

and late charges.

On the schedule of monthly income (Schedule I) filed in his and his wife's bankruptcy

case, Mr. Matera is reported as being unemployed, with $0 of monthly income, and Mrs. Matera

is shown as having a monthly gross income of $4,000, which equates to $48,000 on an annual

basis.  On the statement of financial affairs, Mr. Matera and his wife reported joint gross income

of $113,356 for 2007, and $74,918 for 2008.  Mr. Matera testified that the data he used when

applying for the loan from Swift Financial was from the first quarter of 2008, when Rivercraft

was doing quite well, and that $250,000 would have been a reasonable extrapolation for the year

---

[4]  There was no testimony concerning the fate of Rivercraft, but the statement of financial
affairs filed in the bankruptcy case reflects that it ceased conducting business in October 2009.

had the economy, and with it the market for boats, not collapsed.  He also testified that the

historical income information shown on the statement of financial affairs was based on what was

reported on his tax returns, whereas the numbers he gave to Swift Financial included all of the

household's sources of income, including Mrs. Matera's bonus and the repayment by Rivercraft

of loans he had made to it (which would have been reflected on his tax return only to the extent

of any interest paid).  Those loan repayments alone, he testified, were $18,500 in the first quarter

of 2008, which would annualize to approximately $75,000 that would not have been shown on

his tax returns.

Conclusions of Law and Discussion

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the

general order of reference from the United States District Court for the Eastern District of

Virginia dated August 15, 1984.  A determination of dischargeability is a core proceeding in

which a final judgment may be entered by a bankruptcy judge, subject to the right of appeal.  28

U.S.C. § 157(b)(2)(I).  Venue is proper in this district under 28 U.S.C. § 1409(a).  The debtor has

been properly served and has appeared generally.

II.

Although a bankruptcy discharge eliminates a debtor's liability on most kinds of debts

that existed on the filing date of the bankruptcy petition, certain debts are excluded from

discharge.  § 523(a)(1)-(19), Bankruptcy Code.  Among the excluded categories of debts are

those:

> for money, property, services, or an extension, renewal, or refinancing of credit,
> to the extent obtained by—

5

(A) false pretenses, a false representation, or actual fraud, *other than a*
*statement respecting the debtor's or an insider's financial condition*; [or]
(B) use of a *statement in writing*—
(i) that is materially false;
(ii) respecting the debtor's or an insider's financial condition;
(iii) on which the creditor to whom the debtor is liable for such
money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to
deceive[.]

§ 523(a)(2), Bankruptcy Code (emphasis added).  Critical to the present analysis is the

distinction the statute makes between false statements respecting a debtor's or insider's financial

condition and other types of false representations.  A false statement respecting financial

condition, unlike other types of false statements, must be "in writing," and the creditor's reliance

on it must be "reasonable," which is a higher standard than the "justifiable" reliance required for

other types of false statements.  *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351

(1995); *Giovanni v. Grayson, Kubli & Hoffman, P.C.*, 324 B.R. 586, 592 (E.D. Va. 2005).

The Fourth Circuit has explained that a "statement respecting . . . financial condition" is

not limited to formal financial statements, such as balance sheets and profit and loss statements,

but includes any statement that relates to financial condition.  *Engler  v. Van Steinburg (In re*

*Van Steinburg)*, 744 F.2d 1060 (4th Cir. 1984) (holding that a false oral statement that collateral

being offered as security was unencumbered was a statement concerning the debtor's financial

condition and was therefore not a basis for holding the debt nondischargeable because it was not

in writing as required by § 523(a)(2)(B)).  The written statement need not be prepared by the

debtor if it has been signed, reviewed, or otherwise adopted by him.  *See, e.g., Riggs National*

*Bank of Washington, D.C. v. Ross*, 180 B.R. 121, 127 (Bankr. E.D. Va. 1994), *supplemented and*

*amended*, 180 B.R. 130 (holding that debt could be held nondischargeable when debtor's

attorney, at debtor's request, sent letter to bank omitting large contingent liability even though debtor did not personally sign the letter).  The burden of proof is on the plaintiff, and the standard of proof is preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Given the Fourth Circuit's holding in *Engler*, there can be no dispute—and Swift Financial concedes—that a representation as to the debtor's household income is a statement respecting financial condition and therefore cannot provide a basis for excepting the debt from discharge unless it was made "in writing."  Neither the Fourth Circuit nor lower courts within the Fourth Circuit have yet addressed whether a loan application submitted by telephone can be considered a "statement in writing" for the purpose of § 523(a)(2)(B) when information orally supplied by the applicant is entered into a computer database by the lender (and, obviously, can be printed out at any time).  The only reported opinion at the court of appeals level, however, has specifically ruled that it cannot.  *Bellco First Federal Credit Union v. Kaspar*, 125 F.3d 1358 (10th Cir. 1997).  In that case, the Tenth Circuit, on facts very similar to those here, squarely held "the oral statements made by the debtor which led to the computer generated form are not to be regarded as the functional equivalent of a 'writing' within the meaning of § 523(a)(2)(B)." *Id.* at 1359.  As the Court explained:

> giving a statement of financial condition is a solemn part of significant credit transactions; therefore, it is only natural that solemnity be sanctified by a document which the debtor either prepares or sees and adopts. In a world where important decisions relating to the extensions of credit and service will be made upon the contents of a statement relating to financial condition, too much mischief can be done by either party to the transaction were it otherwise. Somewhere in the commercial risk allocation picture, the writing must stand as a bulwark which tends to protect both sides. . . .  A written statement of financial condition does not mean an oral statement converted into an electronic format.

*Id.* at 1361-62. *See also Cadle Co. v. Orsini*, 2007 WL 1006919 *4-5 (E.D. Tex. 2007) (holding

that document prepared by bank employee based on information orally provided by debtor did

not satisfy requirement for statement in writing when the debtor neither signed it nor had the

opportunity to review it); *LA Capitol Federal Credit Union v. Melancon (In re Melancon)*, 223

B.R. 300, 342 (Bankr. M.D. La. 1998) ("The telephone conversation between [the debtor] and an

agent of the plaintiff does not constitute a writing used by [the debtor], despite the fact that the

bank employee may have prepared a writing based on his oral statements.").

Although there are some opinions to the contrary from lower courts outside this Circuit,

*see, e.g.*, *Chevy Chase Federal Savings Bank v. Graham (In re Graham)*, 122 B.R. 447 (Bankr.

M.D. Fla. 1990)*,* the court does not find them persuasive.  In particular, the *Graham* analysis, in

focusing on the word "published" in § 523(a)(2)(B), divorces it from its grammatical context.

*Graham* involved a credit card application that was submitted by telephone, and the court

reasoned, "Defendants caused a written statement regarding their financial condition to be

*published* by providing plaintiff's telephone solicitor the financial information contained on the

written application for a credit card."  122 B.R. at 451 (emphasis added).  But the grammatical

object of "published" is not the *information* in the statement but rather the written statement

itself ("by use of a statement in writing . . . that the debtor caused to be . . . published").  In short,

there can be no publication within the meaning of § 523(a)(2)(B) before there is a writing to be

published.  In the present case, the only writing—and the court will assume without deciding that

a "screen shot" of information contained in a computer database constitutes a writing for the

purpose of § 523(a)(2)(B)[5]—was created by the creditor itself *after* the debtor had orally

communicated the information.

The fundamental problem with *Graham*, as recognized by both *Bellco* and *Melancon*, is

that it would effectively obliterate the careful distinction crafted by Congress in enacting §

523(a)(2). The statutory scheme clearly evinces Congress's intent to set more rigorous

requirements for non-dischargeability based on false representations respecting financial

condition than for other types of misrepresentations. One of those requirements is that the

statement be in writing. To hold, as Swift Financial argues, that an oral representation is

transformed into a "statement in writing" any time a creditor chooses to make a written

memorandum of it, or enters it into a computer database from which a hard copy can be made by

pressing the "print" button, would eviscerate the statutory requirement for a written statement

and render it meaningless. For that reason, the court concludes that the debtor's motion for

judgment as a matter of law must be granted.

---

[5] The court emphasizes that quite a different issue would be presented if an applicant, instead of providing information orally over the telephone, provided the information by, say, filling out an on-line form on a creditor's internet web site, particularly if the applicant could print out a hard copy for his or her own records or were emailed a confirmation copy after the on-line application had been submitted. But that is not this case, and the court therefore need not determine the furthest boundaries of what constitutes a "statement in writing" in the internet age. *See*, *e.g.*, Fed.R.Evid 1001(1) ("'Writings' and 'recordings' consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing, magnetic impulse, mechanical or electronic recording, or other form of data compilation.")

III.

Because the threshold requirement of a statement in writing has not been met, the court

need not reach the issues of materiality, reliance, and intent to deceive.  Suffice it to note that the

testimony of Swift Financial's witness readily establishes that the debtor's household income

was an important consideration in determining whether, and in what amount, to actually extend

credit to Rivercraft, notwithstanding the mailed solicitation representing that the debtor had been

"pre-approved" for a line of credit.  The issue of whether Swift Financial was "reasonable" in its

reliance on the debtor's bare representation of his income without additional verification, such as

prior year tax returns or current statements of operation for the business from which he derived

his income, is a closer question.  Clearly, as the debtor testified, there were other lenders in the

marketplace that required such additional documentation.  However, the court cannot find that

"reasonable" reliance requires exhaustive verification or double-checking of information

provided by a loan applicant.  *Mester v. Brevard (In re Brevard)*, 200 B.R. 836, 845 (Bankr. E.D.

Va. 1996) ("[T]here is no affirmative requirement that a creditor verify from external sources the

information on a financial statement.").[6]  Swift Financial did obtain a Dunn and Bradstreet report

---

[6]  The opinion in *Brevard* further explains:

> Although reasonableness implies an objective standard, *Field v. Mans*, *supra*, there is no
> bright line test. *Wingo, supra*, 112 B.R. at 145. One relevant inquiry is the extent to
> which "the creditor's actual conduct [comports] with (1) the creditor's own normal
> business practices, and (2) the standards and custom of the industry, (3) in light of the
> surrounding circumstances at the time the application was made and the credit extended."
> *Sovran Bank v. Allen (In re Allen)*, 65 B.R. 752, 763 (E.D.Va.1986), citing *Matter of
> Patch*, 24 B.R. 563, 567 (D.Md.1982).

200 B.R. at 845.  In *Brevard*, a landlord's reliance on a financial statement submitted by the
debtors in connection with a lease application was found not to be objectively reasonable when

(continued...)

on the business and a credit bureau report on the debtor, neither of which appears to have

disclosed information at odds with what the debtor had stated over the telephone.  And its

witness testified without contradiction that Swift Financial's small business loan underwriting

policies were consistent with those within its industry.  Likewise, the court need not reach the

issue of whether the debtor had the required intent to deceive.  Although the evidence is

somewhat weak that the debtor honestly believed he and his wife would bring in $250,000 in

2008 (particularly given that they earned only one-half that amount in 2007), his testimony to

that effect was not inherently unbelievable, and the mere fact that he and his wife did not

succeed in doing so is not conclusive as to what he believed.  Additionally, the debtor's

testimony that he had good reason to believe at the time he applied for the loan that his actual

income was not actually a factor, and that a mere "stated" income was sufficient, would, if

believed, be sufficient to negate an *intent* to deceive, even if Swift Financial was in fact

deceived.  Finally, the court need not reach the issue of whether the debtor actually has personal

liability for the loan Swift Financial made to Rivercraft.  Although the debtor does not deny that

he orally agreed to guarantee the debt, Swift Financial apparently did not have him sign a written

guaranty.  Under Virginia law, an agreement to answer for the debt of another requires a writing

signed by the party to be charged.  § 11-2(4), Code of Virginia.  It is true that the statutory

definition of a "writing" in Virginia is not limited to paper documents.  § 1-257, Code of

Virginia.  ("'Written,' 'writing,' and 'in writing' include any representation of words, letters,

symbols, numbers, or figures, whether (i) printed or inscribed on a tangible medium or (ii) stored

---

[6](...continued)
the credit report the landlord obtained showed significant debts in addition to those reported on
the financial statement.

in an electronic or other medium and retrievable in a perceivable form and whether an electronic

signature . . . is or is not affixed."). Even so, the statute of frauds requires not merely that the

agreement be in writing but that it also be "*signed* by the party to be charged or his agent." Va.

Code Ann. § 11-2 (emphasis added). It is at least questionable whether the mere receipt by Mr.

Matera of written loan terms reciting that the obligation was being guaranteed by him satisfies

that requirement. However, the court will reserve that issue for a case in which the answer

would be outcome-determinative.

A separate judgment will be entered determining that the debtor's liability to M & I and

Swift Financial is dischargeable and has been discharged.


Date: _____                    _____
                                                Stephen S. Mitchell
Alexandria, Virginia                            United States Bankruptcy Judge


Copies to:

Eric David White, Esquire
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, VA 23230
Counsel for the plaintiff

David C. Jones, Jr., Esquire
David C. Jones, Jr., P.C.
10617 Jones Street, Suite 301-A
Fairfax, VA 22030
Counsel for the defendant